IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JOSHUA SHERIN,

                 Plaintiff,                      OPINION AND ORDER

   v.

                                                 11-cv-772-wmc

JEFFREY PUGH, PATRICK J. LYNCH,
JEROME A. SWEENY, STEVEN DORF,
and AARON GLEN,

                 Defendants.

---

In this 42 U.S.C. § 1983 action, plaintiff Joshua Sherin alleges that the above-named correctional officers and officials at Stanley Correction Institution violated his constitutional rights by confiscating legal materials, thereby hindering efforts to challenge his criminal conviction. Defendants have moved for summary judgment, asserting three independent bases for judgment in their favor. (Dkt. #36.) The court will grant defendants' motion because (1) Sherin does not state a claim on which relief may be granted under *Heck v. Humphrey*, 512 U.S. 477 (1994); (2) the state circuit court's determination that Sherin had no right to possess the legal materials at issue bars his claim for relief; and (3) in any event, defendants are entitled to qualified immunity.

# UNDISPUTED FACTS[1]

## A. The Parties

Plaintiff Joshua B. Sherin has been incarcerated at the Wisconsin Department of Correction's Stanley Correctional Institution ("SCI") since November 29, 2007. Sherin was convicted of second degree sexual assault of a child on July 6, 2005, and is a registered sex offender.

Defendant Jeffrey Pugh is the warden of SCI and has held that position since November 8, 2009. Also working at SCI are defendant Aaron Glenn, a correctional officer, defendant Steven Dorf, also a correctional sergeant, and defendant Patrick Lynch, a corrections unit supervisor. Finally, defendant Jeremy Sweeney is currently the security director at Wisconsin Secure Program Facility, but was a corrections unit supervisor at SCI during the period of time relevant to Sherin's complaint.

## B. SCI's Treatment of Legal Materials

At SCI, inmates are allowed to retain legal materials as personal property in their cells as necessary for active legal actions, although the prison limits the size of boxes or bins which inmates can use to contain legal, as well as other personal, materials. SCI also conducts room searches and inspections. The parties dispute whether there is a material difference between searches and inspections, but there is no dispute that legal materials maintained in an inmate's cell are subject to searches.

---

[1] The court finds the following facts taken from the parties proposed findings of fact to be material and undisputed when viewed in a light most favorable to Sherin as the non-moving party.

Defendants maintain that staff is instructed to scan an inmate's legal materials to determine whether the item is what the inmate represents it to be, rather than contraband items, such as pornography. Plaintiff contends that officer Glenn read all of his medical records and other legal documents bearing on his lawsuit. If staff seizes any property during a search, they are required to identify in writing the property seized.

### C. Seizure of Sherin's Alleged Legal Materials

On July 19, 2011, sergeant Dorf ordered housing unit correctional officers to conduct a search of Sherin's cell because there was a concern that he possessed materials related to a group known as the "Sovereign Citizens." Sherin disputes this, arguing instead that his cell was searched because his cellmate told Dorf and Glenn that Sherin was threatening him, although there is no dispute that Dorf had good grounds to conduct a search.[2] Officer Glenn conducted the search of Sherin's property in accordance with standard security policies, including a search of legal materials in Sherin's cell.

During the search, Glenn found a legal size envelope containing a child's medical and school records. Glenn believed that the records were potential contraband and confiscated them to give to Dorf for review. Sherin contends that: (1) Glenn and the rest of the defendants lack relevant training on medical records and criminal discovery; (2) they have never taken these kinds of records from other inmates; and (3) they had never seized these materials in previous searches of his cell.

---

[2] Indeed, as noted above, random, periodic searches of all inmates' cells are conducted without specific cause as a safety matter.

Dorf completed a form related to the seizure of these records, and believing that they were contraband, he gave them to his supervisor, Patrick Lynch, for review. Lynch was aware that Sherin was a sex offender prior to his reviewing the confiscated records. The records contained school records, mental health case notes and other medical records of a child. These records concerned extremely sensitive and graphic information concerning a child sexual assault victim. As unit supervisor Lynch was understandably concerned about the appropriateness of Sherin's possession of these records. Specifically, he was concerned about confidentiality, especially possible Health Insurance Portability and Accountability Act ("HIPAA") violations, and whether these materials were contraindicated for Sherin's treatment and rehabilitation needs and/or could be used to further victimize this minor. Sherin challenges Lynch's training to make these determinations.

Lynch spoke with Sherin about the records. Sherin told him that he objected to the confiscation and indicated that he had paperwork demonstrating that his possession was appropriate, pointing him to a letter from his trial attorney indicating that he sent Sherin his entire case file. Lynch reviewed these materials and found nothing that authorized Sherin's possession of the materials. Lynch also reviewed the Wisconsin's Consolidated Court Automation Program ("CCAP") and found no orders authorizing his possession. Lynch told Sherin that he (1) needed to verify that the confiscated records were allowed and (2) would advise Sherin as soon as possible as to his findings.

At some point, Lynch informed Warden Pugh of the situation. Pugh believed that the involvement of the Department of Corrections Office of Legal Counsel was necessary

4

to determine if the records were subject to any protective order. Sherin believes Pugh decided to hold the records and contact legal counsel for the purpose of delaying and frustrating his appeal.

On July 19, 2011, Lynch also contacted the Assistant District Attorney who prosecuted Sherin's criminal case and the DOC Office of Legal Counsel to request advice. The ADA told Lynch that there were protective orders in place and that she was surprised Sherin's trial attorney gave him these records. The ADA also stated that she would compile these orders for Lynch. On or about July 20, 2011, Lynch received a fax from the ADA which he provided to the Warden's office.

Lynch gave the records to then Unit Supervisor Jerome Sweeney pending a determination as to whether the records were contraband or could be returned to Sherin. Sweeney reviewed the fax from the ADA and determined that the orders, at most, allowed Sherin to view the records, but required that the records be retrieved from him after review.[3] Sherin challenges Sweeney's legal training to make that determination.

---

[3] Defendants provided certified records from St. Croix County as part of their summary judgment submission. In an order dated February 10, 2005, St. Croix County Circuit Court Judge Edward Vlack specifically addressed Sherin's access to the victim's medical and school records:

> It is also hereby ordered that the medical records . . . may be provided to [Sherin] by Attorney Nelson in a private room at the St. Croix County Jail where [Sherin] may review said records, returning said records in a sealed envelope to the St. Croix County Jail staff. Attorney Nelson will then retrieve said records from the St. Croix County Jail within twenty-four (24) hours.

(Dkt. #38 at p.2.) Despite this order, Sherin represents that on January 10, 2010, his trial counsel Attorney Nelson sent Sherin the entire case file, including these records.

Sweeney represents that the records contained a photograph of injuries to the victim's genitalia and that one of the orders specifically prevented Sherin from viewing the photograph.[4] Sherin contends that the records did not contain this photograph and that he has never had the photograph at issue. Warden Pugh determined that defendants needed a more definitive determination from either DOC Legal Counsel or the St. Croix County Circuit Court before the records could be returned to Sherin. At some point, DOC Legal Counsel instructed SCI staff to retain the records pending resolution of the proper disposition.

During this time, Sherin wrote multiple letters to Warden Pugh, Deputy Warden Canziani, Lynch, and Sweeney demanding that the records be returned to him.

D. **State Court Ruling**

On November 14, 2011, Sherin filed a motion with the St. Croix County Circuit Court in *State v. Sherin*, No. 2004-CF-343 (St. Croix Cnty. Wis. Cir. Ct.), requesting that the court order the return of the records confiscated from his cell. On December 5, 2011, the St. Croix County District Attorney responded with a Motion for Enforcement of Protective Order, which sought an order requiring a return of the record at issue to the circuit court and prohibiting any further disclosure to Sherin or any other person without a specific written order. Hearings were held on these motions on December 20, 2011, and February 6, 2012.

---

[4] On March 15, 2005, Judge Vlack issued an order concerning a color photograph of the victim's genitalia and specifically ordered that the photograph "shall not be shown to the defendant, Joshua Sherin." (Dkt. #38 at p.5.)

In a decision and order dated February 21, 2012, Judge Vlack denied Sherin's motion and granted the government's motion, opining in pertinent part:

> under no circumstances can Mr. Sherin prevail or show that he is entitled to maintain possession of the victim, DR's, records. The materials that he seeks to retain and access are DR's school records and medical records that he was specifically prohibited from possessing, for good reason, back in 2005. The protective orders of March 15, 2005, and February 10, 2005, made it abundantly clear . . . that under no circumstances was he allowed to retain possession of the victim, DR's, records and he was not allowed any access to certain materials due to his history, the age of the victim, and all attendant circumstances surrounding the sexual assault of a seven-year old child. How Mr. Sherin retained possession of the victim, DR's, medical and school records is unclear, but that time has now come to an end.

(Dkt. #38 at p.13.) Accordingly, the court ordered the record be returned to the court, which SCI subsequently did.

Sherin appealed Judge Vlack's decision. On April 13, 2013, the Wisconsin Court of Appeals affirmed, finding that (1) the protective order in place "struck a balance between the rights of the child victim and Sherin's right to present a defense" and (2) "[t]he order remains appropriate in light of Sherin's criminal history and his failure to demonstrate how the records are relevant to any postconviction proceedings he may pursue." *State v. Sherin*, No. 2012AP577, 2013 WL 1581037, slip op. at ¶¶ 6-7 (Wis. App. Ct. Apr. 16, 2013).

OPINION

Defendants raise three bases for judgment in their favor: (1) plaintiff's claim for injunctive relief is moot in light of SCI's return of the record to the St. Croix County

Circuit Court and any claim for damages is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994); (2) the doctrine of issue preclusion bars Sherin's claim because the state courts already determined that Sherin has no right to these records; and (3) regardless, defendants are entitled to qualified immunity. While any one of these three bases is sufficient, Sherin's claims are barred by all three.

### I. *Heck v. Humphrey* as Bar to Damages

Since SCI already returned the records at issue pursuant to state court order and, therefore, defendants no longer control the records, prospective relief in the form of a court order requiring their return by these defendants is no longer available. Accordingly, Sherin's *only* possible remedy is for monetary damages, which are not available in an access-to-courts claim, like that here, unless and until the plaintiff is successful in overturning his conviction.

In *Heck*, the Supreme Court held that a prisoner is barred from pursuing a § 1983 claim when a "judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." 512 U.S. at 487. In *Hoard v. Reddy*, 175 F.3d 531 (7th Cir. 1999), and *Nance v. Vieregge*, 17 F.3d 589, 591 (7th Cir. 1998), the Seventh Circuit extended *Heck* to bar damages for denial of access-to-court claims where the alleged injury involved a challenge to the plaintiff's conviction.

As the court explained in *Hoard*, "where the prisoner is complaining about being hindered in his efforts to get his conviction set aside, the hindrance is of no consequence if the conviction is valid, and so he cannot get damages until the conviction is

8

invalidated." *Hoard*, 175 F.3d at 534; *see also Nance*, 147 F.3d at 591 ("[T]he holding in *Lewis* [*v. Casey*, 518 U.S. 343, 351 (1996)] that a claim based on deprivation of access to the courts requires proof of concrete injury, combined with the holding of *Heck*, means that a prisoner in [plaintiff's] position must have the judgment annulled before damages are available.").

In a recent opinion, the Seventh Circuit affirmed this holding in an access-to-courts claim much like that asserted by Sherin:

> The approach of *Nance* and *Hoard* establish the path that we must follow today. Because the underlying claim for which Mr. Burd sought access to the prison law library was the opportunity to withdraw his guilty plea, he cannot demonstrate the requisite injury without demonstrating that there is merit to his claim that he should have been able to withdraw the plea. Such a showing necessarily would implicate the validity of the judgment of conviction that he incurred on account of that guilty plea. The rule in *Heck* forbids the maintenance of such a damages action until the plaintiff can demonstrate his injury by establishing the invalidity of the underlying judgment. Accordingly, we conclude that Mr. Burd has not established a basis for recovering any type of damage relief under § 1983.

*Burd v. Sessler*, 702 F.3d 429, 434-35 (7th Cir. 2012).

Here, Sherin alleges that defendants' confiscation of the records at issue and refusal to return those records hindered his efforts to appeal his criminal conviction. It is undisputed that Sherin has not successfully challenged his conviction to date. Indeed, it appears that the statute of limitations for Sherin to file an appeal has lapsed. (*See* Dkt. #38 at p.13 ("What Mr. Sherin omits in his argument is that he was convicted on

9

October 28, 2005, and the time for appeal has long since passed.").)[5] As such, Sherin's claim for damages fails as a matter of law.

**II. Issue Preclusion as Bar to Claim**

Even if Sherin had stated a claim on which relief may be granted, his claim still fails because of the St. Croix County Circuit Court's determination that Sherin had no right to the records at issue. The Full Faith and Credit Statute, 28 U.S.C. § 1738, provides that "judicial proceedings . . . shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State." Therefore, this court must give defendants the same claim- and issue-preclusive effect that Wisconsin state courts would. *Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 373 (1996); *see also Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984) ("It is now settled that a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered.").

"Collateral estoppel, or issue preclusion, is a doctrine designed to limit the relitigation of issues that have been contested in a previous action between the same or different parties." *Michelle T. by Sumpter v. Crozier*, 173 Wis. 2d 681, 687, 495 N.W.2d 327, 329 (1993). As the court indicated in its opinion and order screening this claim to go forward, "an inmate may prevail on a right-of-access claim only if the official actions

---

[5] The untimeliness of Sherin's possible appeal also casts doubt on whether a criminal appeal would constitute a nonfrivolous lawsuit. *See Lehn v. Holmes*, 364 F.3d 862, 868 (7th Cir. 2004).

at issue hindered his efforts to pursue a legal claim." *Eichwedel v. Chandler*, 696 F.3d 660, 673 (7th Cir. 2012) (internal citation and quotation marks omitted).  In light of the circuit court's determination that Sherin had no right to the records at issue here, defendants' actions in confiscating these records did not, as a matter of law, hinder his efforts to pursue a legal claim.[6]  Accordingly, Sherin's access-to-courts claim is barred by the circuit court's decision in his criminal case.

**III. Qualified Immunity**

To determine whether defendants are entitled to qualified immunity, the court must consider: (1) "whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right," and (2) if so, "whether that right was 'clearly established' at the time of the defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (internal citations omitted); *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001).

First, despite Sherin's claims to the contrary, defendants' conduct here falls well within constitutional limits.  While Sherin disputes the purported reason for the search, Sherin does not challenge defendants' general right to search his belonging for contraband, including offending written or pictorial materials. *Conyers v. Abitz,* 416 F.3d 580, 584 (7th Cir. 2005) ("[Courts] generally defer to the judgment of prison officials

---

[6] While Sherin is correct to point out that the circuit court did not consider his constitutional claim -- and therefore that decision does not serve as a basis for *claim* preclusion -- the court's holding that Sherin had no right to the records in light of certain protective orders in place in his criminal case, still bars Sherin's claim here.

11

when they are evaluating what [searches are] necessary to preserve institutional order and discipline"). It is also undisputed that defendants' confiscated explicit records of a juvenile, which were at least in apparent violation of SCI's policy, in apparent contradiction of Sherin's specific penological and rehabilitative needs and, ultimately, in violation of a court order. Defendants' restricting Sherin's access to those materials until their apparent impropriety could be confirmed was reasonable, if not exemplary conduct, by defendants.

Second, Sherin has failed to point to any case law clearly establishing that a prison official cannot seize purported confidential, legal materials found in the possession of an inmate to investigate whether the materials constitute contraband. *See Nanda v. Moss*, 412 F.3d 836, 844 (7th Cir. 2005) ("It is the plaintiff's burden to demonstrate the existence of a clearly established constitutional right."). Even if Sherin could piece together a constitutional violation, defendants are entitled to qualified immunity because such a violation was not clearly established at the time of the incident.

ORDER

IT IS ORDERED that:

1) defendants' motion for summary judgment (dkt. #36) is GRANTED;

2) plaintiff Joshua Sherin's claims are dismissed with prejudice; and

3) the clerk of the court is directed to enter judgment in favor of defendants and close this case.

Entered this 16th day of December, 2013.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge